UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
TAMIQUELA J. CHERRY, as parent and  )
Next Friend of D.C., a minor,       )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    Civil Action No. 14-2152 (RBW)
                                    )
DISTRICT OF COLUMBIA,               )
                                    )
        Defendant.                  )
_____ )

**MEMORANDUM OPINION**

The plaintiff in this civil matter asserts a number of claims against the District of Columbia based on allegations that a Metropolitan Police Officer improperly ordered the plaintiff's daughter to "undress" and then "proceeded to take photographs of her vaginal, breast, and anal areas" during the course of an investigation. First Amended Complaint ("Compl.") ¶¶ 6, 7. Currently before the Court is the Defendant's Motion to Dismiss [the] Plaintiff's Amended Complaint ("Def.'s Mot."). Upon careful consideration of the motion and the parties' memoranda of law, the Court concludes that it must grant the defendant's motion to dismiss.[1]

**I.   BACKGROUND**

According to the allegations contained in the plaintiff's First Amended Complaint, on November 30, 2013, the plaintiff "reported to the [Metropolitan Police Department ("MPD")] that her 15-year-old daughter, D.C., had run away from home." Compl. ¶ 6. On the morning of

---

[1] In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: (1) the Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def.'s Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Amended Complaint ("Pl.'s Opp'n"); and (3) the defendant's Reply to Plaintiff's Opposition to the District's Motion to Dismiss the Amended Complaint ("Def.'s Reply").

1

December 1, 2013, Metropolitan Police Officer Marcus Washington ("Officer Washington") "responded to the [plaintiff's] home to speak with [the plaintiff about the report she had made concerning her daughter]." Id.  The plaintiff then alleges that the following occurred:

> During the early afternoon of December 1, 2013, D.C. returned home from a friend's house. [The plaintiff] notified the MPD of D.C.'s return. On December 1, 2013 at approximately 11:40 p.m.[,] Officer Washington came to the [plaintiff's] home to conclude his investigation. Officer Washington instructed the family that he had to speak to D.C. alone and took her into a back bedroom of the home away from her mother where he proceeded to close the door. While in the bedroom with the door closed, Officer Washington firmly ordered D.C. to undress partially at first before forcing her to disrobe entirely whereupon he began to take photographs of her naked body.[] D.C. protested but was told that the photographs were necessary to document her scars, injuries[,] and tattoos. D.C. informed Officer Washington that she had no injuries and did not want to disrobe. Nonetheless, Officer Washington persisted and insisted that D.C. do as he had ordered. Feeling fearful and compelled to obey, D.C. did as she had been ordered. Once D.C. was undressed, Officer Washington proceeded to take photographs of her vaginal, breast, and anal areas, ordering her to position her body in various ways as he did so.

Id. ¶ 7. The plaintiff asserts that she "promptly contacted the police department," and that after an investigation, Officer Washington's "camera was confiscated and he was subsequently arrested." Id. ¶ 8.

The plaintiff contends that "Officer Washington's actions were the natural outgrowth of the MPD's long-standing policy of rehiring or failing to fire officers who abuse their positions of power over civilians." Id. ¶ 14. Specifically, the plaintiff alleges that "[t]he District of Columbia, acting through the MPD, has a custom and practice of rehiring officers and failing to terminate the employment of officers who commit crimes or otherwise unethical, dangerous, and reckless acts, both on and off duty." Id. ¶ 13.

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). So to survive a motion to dismiss for

2

"failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556); see also Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged").  Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this assumption.  See, e.g., Kowal, 16 F.3d at 1276.  Along with the allegations made within the four corners of the complaint, the court can also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice."  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.   ANALYSIS

#### A. The Plaintiff's Section 1983 Claim

A claim brought pursuant to 42 U.S.C. § 1983 (2012) "provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).[2]  "Although a municipality[3] is a 'person' subject to suit under [Section] 1983 for constitutional violations, it 'cannot be held

---

[2] The section states, in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2012).

[3] "The District of Columbia is a municipality for the purpose of [Section] 1983." People for Ethical Treatment of Animals, Inc. v. Gittens, 396 F.3d 416, 425 (D.C. Cir. 2005) (citation omitted).

liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section] 1983 on a respondeat superior theory.'" Singletary v. Dist. of Columbia, 766 F.3d 66, 72 (D.C. Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  As this Circuit has explained,

> in considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry.  First, the court must determine whether the complaint states a claim for a predicate constitutional violation.  Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation.

Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).  For the purposes of resolving its motion to dismiss, the defendant assumes that the plaintiff has satisfied the first prong of this test, in that Officer "Washington's alleged conduct violated the Fourth Amendment's prohibition on unreasonable searches and seizures."  Def.'s Mem. at 4.  Instead, the defendant contends that the plaintiff has failed to satisfy the second prong because she has not established that a District of Columbia custom or policy caused the constitutional violation.  See id.

In assessing whether the plaintiff's complaint satisfies this second prong, "[t]he court must determine whether the plaintiff has alleged an 'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation."  Baker, 326 F.3d at 1306 (citations omitted).  There are "a number of ways a municipality can adopt a policy or custom that might create liability," Brown v. Dist. of Columbia, 514 F.3d 1279, 1283 (D.C. Cir. 2008), including:

> the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom,"; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations,

4

Baker, 326 F.3d at 1306 (citations omitted).

As support for her position that she has adequately pleaded the second element of her Section 1983 claim, the plaintiff contends that:

> the District of Columbia has a policy or custom of reinstating officers and failing to terminate the employment of officers who commit crimes or other misconduct, both on and off duty. The frequent reinstatement of officers and failure to terminate the employment of officers in the first place has led to widespread abuses of power.

Pl.'s Opp'n at 3 (citations omitted). The plaintiff relies exclusively on the testimony of Cathy L. Lanier, Chief of Police of the MPD, presented to the Committee on the Judiciary & Public Safety of the Council of the District of Columbia, during which Chief Lanier expressed concerns about the MPD's union grievance process. Specifically, Chief Lanier explained that:

> Time and time again, arbitrators have forced the Department to rehire officers who had been fired for misconduct. In many of these cases, there is no dispute that the member engaged in misconduct. Instead, arbitrators focused on missed deadlines or other minor procedural errors that had nothing to do with the merits of the case. Instead of asking that the Department hold the responsible official accountable, or imposing a fine or other sanction on the Department, the arbitrator orders the officer to be reinstated, regardless of the egregiousness of the misconduct committed. In other cases, arbitrators have simply disagreed that termination is an appropriate penalty, and have substituted their judgment for mine as to who should be entrusted to safeguard the residents of the District.

Compl., Exhibit ("Ex.") B (Jan. 24, 2014 Testimony of Cathy L. Lanier ("Testimony")), at 5. But the arbitrators who purportedly reinstated these officers are not policymakers or even employees of the District of Columbia, but third parties who are in no way beholden to the defendant. See Def.'s Reply at 2 (explaining that the arbitrators' actions are "not attributable to the District" and that these "out-of-state arbitrators" "have forced the [MPD] to rehire officers who have been fired for misconduct" by the MPD (quoting Compl. Ex. B (Testimony) at 5, 7)); Cf. McConnell v. Howard Univ., 818 F.2d 58, 68 n.12 (D.C. Cir. 1987) ("[T]o allow one of the parties to act as judge in its own case" as an arbitrator would be "totally inconsistent with the theory of arbitration." (quoting Manes v. Dallas Baptist Coll., 638 S.W.2d 143, 145 (Tex. Ct.

5

App. 1982)). The arbitrators' decisions to reinstate certain officers are actions that cannot be attributed to the defendant for purposes of establishing a custom or policy. And as previously explained, the plaintiff must establish that a "custom or policy <u>of the municipality</u> caused the violation." <u>Baker</u>, 326 F.3d at 1306 (emphasis added).

With respect to those employment actions that could be attributed to the defendant, Chief Lanier's testimony actually contradicts the plaintiff's assertions. Chief Lanier stated:

> No officer is above the law whether on or off duty; unlike any other profession, police officers are held accountable for their off-duty conduct. Any officer engaged in criminal misconduct will be investigated and prosecuted regardless of whether that misconduct occurred while they were in uniform or on their own time.

Compl., Ex. B (Testimony), at 2. Indeed, the purpose of Chief Lanier's testimony was to inform the District of Columbia's legislative body that her "final decisions on whether or not officers are fit to serve" were being "undermined by <u>unaccountable</u> arbitrators." <u>Id.</u> at 7 (emphasis added).

Regardless, even if the plaintiff had established some sort of policy on the part of the defendant, she must also "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Bd. of Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997). And "[t]he fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy <u>Monell</u>'s requirement that the particular policy be the 'moving force' behind a <u>constitutional</u> violation." <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985) (plurality opinion). "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." <u>Id.</u> at 823. Here, the plaintiff offers nothing more than threadbare assertions that the arbitrators' aforementioned decisions led to a "culture of impunity," Pl.'s Opp'n at 4, which is entirely insufficient to establish a causal link between any purported custom or policy and the alleged constitutional deprivation at issue in this case. See <u>Tuttle</u>, 471 U.S. at 823–24.

6

**B. The Plaintiff's Remaining Claims Under District of Columbia Law**

In addition to her Section 1983 claim, the plaintiff has also asserted claims of Assault, Intentional Infliction of Emotional Distress, and False Imprisonment under District of Columbia law. Compl. ¶¶ 18–34. The defendant asks the Court to "decline to exercise supplemental jurisdiction over the remaining local law claims" if it dismisses the plaintiff's Section 1983 claim. Def.'s Mot. at 1.

"A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed." Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) (citing 28 U.S.C. § 1367(c)(3)). Whether to retain jurisdiction over pendent state and common law claims after the dismissal of the federal claims is "a matter left to the sound discretion of the district court." Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995). "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Having dismissed the only federal claim, the Court declines to exercise pendent jurisdiction over the plaintiff's District of Columbia claims. E.g. Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1043 (D.C. Cir. 2003) ("Dismissal of the pendent claims was appropriate here, where all of the federal claims were properly resolved against appellants."). And as the undersigned has previously explained:

> Critical to the Court's decision to dismiss the non-federal claims is 28 U.S.C. § 1367(d), which provides that the period of limitations for any of these District of Columbia law claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

7

Shekoyan v. Sibley Int'l Corp., 309 F. Supp. 2d 9, 21-22 (D.D.C. 2004) (Walton, J.), aff'd sub nom. Shekoyan, 409 F.3d at 414.

The Court also notes that the plaintiff's opposition fails to address the defendant's assertion that this Court should decline to exercise pendent jurisdiction. See generally Pl.'s Opp'n. Accordingly, the Court will also treat the defendant's position regarding the exercise of pendent jurisdiction as conceded. E.g. Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citations omitted), aff'd sub nom. 98 F. App'x 8 (D.C. Cir. 2004).

### IV.   CONCLUSION

The alleged conduct of Officer Washington is reprehensible if it occurred. Nevertheless, the law requires the Court to dismiss the plaintiff's Section 1983 claim against the District of Columbia for failure to establish a custom or policy that would have caused the alleged violation. Having dismissed the plaintiff's only federal claim, the Court declines to exercise pendent jurisdiction over her remaining District of Columbia claims. Accordingly, in the exercise of its discretion, the Court also grants the defendant's motion to dismiss the plaintiff's District of Columbia claims.

**SO ORDERED** this 18th day of March, 2016.[4]

REGGIE B. WALTON<br>
United States District Judge

---

[4] An Order consistent with this Memorandum Opinion will be issued contemporaneously.